GOULD *against* STANTON and others.

Gould
*v.*
Stanton.

*A* executed and delivered to *B* a deed purporting to convey to him certain undivided parts of two vessels; after which *A* died, and *P*, the administrator of his estate, brought a bill in equity against *B* to set aside such deed, on the ground that it was void for want of consideration, and was fraudulent under the statute of 1828. These poinst were decided on such bill against *P.* In a suit afterwards brought to recover a portion of the earnings of the vessels, by *C*, the assignee of *B*, against *D*, who claimed title to said shares under a probate sale from *P*, it was held, that the record of the decree in the first-mentioned suit was admissible and conclusive against *D* to establish the validity of the deed, not only because *D* was privy in estate to *P*, but because he purchased with both constructive and actual notice of the pendency of this suit.

Upon a bill to set aside a deed as fraudulent, the court may establish the title under such deed, without a cross-bill for that purpose; and the facts put in issue and found by the decree, in such case, cannot be again contested, by parties or privies.

Where *B* covenanted with *P* not to sue or molest him, in his person or estate, for any estate, or act in relation to any estate, of *A*, (*P's* intestate,) or for any property assigned by *A* to *B*, and to save *P* harmless therefrom; in a suit subsequently brought by *C* against *D* touching some of the estate mentioned in *B's* covenant, it was held, that although these writings would, as between the parties thereto, have the effect of a release, to prevent circuity of actions, yet they were personal between them, and did not affect any claim of *C* against *D* in relation to such estate.

Though the mortgagee of a vessel not in possession, is not liable for disbursements, nor entitled to profits; yet where *A*, a part-owner, made an assignment of his interest to *B*, by an instrument purporting to be an absolute conveyance, for a specific purpose, authorizing *B* to sell such interest and apply the proceeds, and providing that the surplus, if any, should be paid over to *A;* it was held, that *B's* interest was not that of a mortgagee.

And it did not vary the character of the conveyance, in such case, that part of the consideration was the assumption by *B* of certain responsibilities of *A*, which *B* might fail to pay.

When a part-owner of a vessel conveys his interest to one who does not take actual possession, but no one claims possession against him, the possession of the other part-owners may be considered as the possession of the vendee.

Where there are several owners of a vessel, the major interest is to direct its employment.

If a part-owner is unwilling to submit to the decision of the major interest, a court of admiralty, on his application for that purpose, may protect him from loss, by requiring security.

If a vessel be sent on a voyage, by the major interest, and the minority neither apply to a court of admiralty for security, nor take any part in the voyage, they must bear their proportion of the expenses, and are entitled also to their proportion of the profits.

On a bill for an account, under such circumstances, by the minor owner, against the ship s husband, the rule of accounting is the actual net profits of the voyage.

THIS was a bill in chancery, brought by *Charles Gould*, as assignee of *Deforest Manice*, against *Charles F. Stanton* and others, late joint owners with said *Manice* of the ship *Charles Adams* and the brig *Uxor*, seeking an account of the earnings of these vessels on a whaling voyage to the *Falkland* islands in the *Southern Ocean*.

New-London, July, 1843.

Gould
v.
Stanton.

Previous to the 16th of *May*, 1833, *Charles E. Phelps*, then of *Stonington*, since deceased, was the undisputed owner of fifteen sixty-fourth parts of said vessels in common with sundry other persons. On the 10th of *November*, 1833, the vessels being fitted and furnished with all the necessaries for the performance of a whaling voyage to the *Falkland* islands, sailed on such voyage from *Stonington*, and proceeded to the *Falkland* islands, and there continued to prosecute said voyage ; and after taking on board large quantities of oil and whale-bone, said vessels returned with the same to *Stonington*, in the month of *December* 1834 ; which were taken possession of, by *Charles T. Stanton* and *Francis Pendleton*, two of the defendants ; and they, as the agents and for the benefit of the concern, on the 9th day of *February* 1835, received the proceeds of the voyage, amounting to 31,315 dollars, 66 cents ; which they afterwards paid over to the owners, officers and crew of said vessels, in proportion to their respective interests, except to the owner of said fifteen sixty-fourth parts, who has not received any part thereof. The net proceeds of the voyage remaining in the hands of said *Stanton* and *Pendleton*, amount to 2254 dollars, 49 cents ; for which they have rendered no account.

On the hearing before the committee, the plaintiff, to prove title to a part of the proceeds of the voyage, offered in evidence a deed of assignment from *Charles E. Phelps* to *Deforest Manice*, dated the 16th day of *May* 1833, the execution and delivery of which were proved. To the admission of this deed in evidence the defendants objected, on the ground that it was void under the statute of 1828 against fraudulent conveyances, and also for want of consideration. But the committee, finding a good and sufficient consideration for the deed, admitted it in evidence.

In further support of his title, the plaintiff offered in evidence an assignment from *Deforest Manice* to him, dated the 8th of *April* 1837, the execution and delivery of which were

proved.    This deed also was objected to, by the defendants, on the ground that it was void under the statute above-mentioned, and that there was no evidence that the trusts specified therein were accepted by the plaintiff.    The committee, however, found, that the plaintiff had accepted those trusts; and thereupon they admitted said assignment in evidence.

The defendants proved, that no bond was given by the plaintiff, in the probate district of *Bridgeport* where said assignment from *Manice* to him was made ; that neither said *Manice*, nor said *Gould*, was, at the time of the assignment, an inhabitant of or resident in said probate district ; but that both of them were, at that time, and ever since have continued to be, inhabitants of and residents in the city of *New-York*.    On this ground also, the defendants objected to said assignment as evidence ; but the committee held it admissible, notwithstanding this objection.

The plaintiff also offered in evidence the record, proceedings and decree of the circuit court of the *United States* for the district of *Connecticut*, on the bill in chancery of *Benjamin Pomeroy*, as administrator of the estate of *Charles E. Phelps*, deceased, against said *Manice, Benjamin F. Phelps* and *Erasmus D. Foot.* (*a*)    The object of the bill was to set aside the deed of the 16th of *May*, 1833, from *Phelps* to *Manice ;* and the decision was against the plaintiff in that suit. A deposition of the clerk of said court, that said decree was in full force, accompanied such record.    To the admission of this evidence the defendants objected ; but the committee admitted it.

The defendants claimed title to said shares, by virtue of a sale at public auction, on the 21st of *September*, 1833, by *Benjamin Pomeroy*, administrator of the estate of said *Phelps*, which was insolvent, under an order of the court of probate, to pay his debts ; the purchasers at such sale having notice of the assignment from *Phelps* to *Manice* and of the pendency of said bill in the circuit court.    Since that time, they have claimed and exercised the rights of owners of said shares.    The appointment of *Pomeroy* as administrator of *Phelps's* estate, on the 26th of *July* 1833, the sale and con-

(*a*) A particular statement of the bill referred to, is omitted, to avoid prolixity. As the point depending thereon is a subordinate one in the case, it is presumed that such omission will be deemed excusable.

veyance by such administrator, and a registry of the vessels in the names of the defendants, were duly proved.

The defendants also claimed, that neither *Manice*, nor the plaintiff, was ever in possession of said vessels, or either of them, and never took any part in fitting them out for said voyage, nor paid any portion of the expenses; but that all the labour was performed, and all the expenses were incurred, by the defendants. It was admitted, however, that the defendants, *Stanton* and *Pendleton*, claiming title as aforesaid, acted as the agents of the owners in the fitting out for said voyage, and in disposing of the proceeds thereof.

It was proved, that within a few days after the execution of said *Phelps's* deed to *Manice*, and before the granting of administration on his estate, the defendants had notice thereof; and that the purchasers at said administrator's sale bought with notice of said assignment, and of the pendency of said bill in said circuit court; and the record was offered in evidence in connexion with the proof and claim aforesaid, and though objected to, on the grounds before stated, was admitted by the committee. No other proof of title, or of the consideration of the conveyance from *Phelps* to *Manice*, was adduced by the plaintiff.

The defendants claimed, that even if all the conveyances through which the plaintiff claimed title were established as valid, and gave him a title to said shares, yet they gave him no right to call upon the defendants to account to him for any portion of the avails or profits of the voyage: and they objected to any evidence going to show what the avails or profits of the voyage were. But the committee overruled the objection and admitted the evidence, and thereupon found the amount above stated, for which the defendants were accountable to the plaintiff.

The defendants further claimed, that although they were originally liable to the plaintiff, or to *Manice*, for the avails and profits of the voyage, yet that *Manice*, in and by an agreement under his hand and seal, dated *Oct.* 18th 1837, and the plaintiff, in and by a certain writing duly executed by him, dated *Oct.* 31st 1837, had fully discharged and released the defendants from all claims and demands for and on account of such avails and profits. Of the first of these instruments the following is a copy:

*New-London,*
*July 1843.*

*Gould*
*v.*
*Stanton.*

" Know all men by these presents, that I, *Deforest Manice,* of the city, county, and state of *New-York,* for and in consideration of the mutual settlement of all suits and controversies between *Benjamin Pomeroy* of *Stonington* in the state of *Connecticut,* administrator of the goods and estate of *Charles E. Phelps,* deceased, late of said *Stonington,* and myself, do hereby covenant and agree with the said *Benjamin Pomeroy,* that I will not sue or molest him in his person or estate, for any estate, or for any debt in relation to any estate, of said *C. E. Phelps,* deceased, or for any property assigned by said *C. E. Phelps* to me. And I do further covenant with the said *Pomeroy* to save him harmless from all claims, suits or demands, by any person or persons claiming from or under me, for any estate of said *C. E. Phelps,* deceased, or for any property assigned by said *C. E. Phelps* to me. In witness whereof, I have hereunto set my hand and seal, at the city of *New-York,* this 18th day of *October,* A. D. 1837.

*D. Manice.*" [L. S.]

The other instrument was as follows :

" Whereas *D. Manice* of the city, county, and state of *New-York,* on the 8th day of *April,* 1837, did assign to me, *Charles Gould,* of said *New-York,* certain estate situate in the state of *Connecticut,* in trust, as by said deed of assignment, dated *April* 8th, 1837, will appear ; and whereas said estate is involved in controversy, and divers suits are now pending respecting it, which are troublesome, expensive and of doubtful issue ; and whereas said *Manice* has made an agreement with *Benjamin Pomeroy,* of *Stonington,* in said state of *Connecticut,* administrator of *C. E. Phelps,* deceased, to settle said suits and controversies ; and in pursuance of said agreement, has executed and delivered to said *Pomeroy* a covenant and agreement, (dated the 18th day of *Oct.* inst.) not to sue or molest said *Pomeroy* in his person or estate, for any estate, or act in relation to any estate, of *Charles E. Phelps,* deceased, or any property assigned by said *Charles E. Phelps* to said *Manice :* now, I, the said *Charles Gould,* hereby assent to said covenant and agreement with said *Pomeroy,* and agree not to do any act in violation of the stipulations contained therein ; and also give my assent to the withdrawal of the suits now pending in the circuit court of the *United States* in

the district of *Connecticut*, and in the *Southern* district of *New-York*, in consideration aforesaid. In witness whereof, I have hereunto set my hand and seal, at *New-York*, this 31st day of *October*, 1837.

New-London,<br>July, 1843.<br>———<br>Gould<br>v.<br>Stanton.

*Charles Gould.*" [L. S.]

The committee decided, that these documents did not discharge the defendants from the claims of the plaintiff in relation to said avails and profits.

The case, embracing the foregoing facts and the questions of law arising thereon, was reserved for the advice of this court.

It was argued, at the term of this court in *New-London* county, in 1842, by *Strong* and *Baldwin*, for the plaintiff, and by *Bissell* and *Foster*, for the defendants. After consultation among the judges, it was continued, to be re-argued in 1843 ; which was accordingly done, by the same counsel.

The counsel for the plaintiff contended, 1. That the plaintiff had a valid title to $\frac{15}{64}$ths of the vessels. In the first place, the conveyance from *Phelps* to *Manice* was not void for want of consideration ; for a sufficient consideration is found. Secondly, it was not void as being fraudulent under the statute of 1828. This point was settled, by the decision in the case before the circuit court, between *Pomeroy*, under whom the defendants claim, and *Manice*. The record of this decree was admissible, not only because the defendants are privy in estate to *Pomeroy*, but because they purchased during the pendency of the suit, and thus had constructive notice ; besides which, they had actual notice, as the committee have found. *Murray* v. *Ballou*, 1 *Johns. Ch. R.* 566. *Hopkins* v. *McLaren*, 4 *Cowen* 667. 678,9. *Jackson* v. *Stone*, 13 *Johns. R.* 447. *Jackson* d. *Hendricks* v. *Andrews*, 7 *Cowen* 152. 156. Thirdly, the conveyance in question was not void, by reason of a non-compliance with the requirements of the statute of 1828. The want of a bond, if a fatal defect under any circumstances, could be taken advantage of, only by those for whose benefit it was to be given, and not by these defendants.

2. That the plaintiff's claim is not extinguished or barred, by the writings signed by *Manice* and the plaintiff, respect-

ively, of the 18th and 31st of *October*, 1837. The first was only a covenant by *Manice* not to sue *Pomeroy* ; and the second was only *Gould's* assent to that covenant.

3. That the plaintiff's title being established, he was entitled to his proportion of the earnings of the vessels ; and it was not in the power of his co-owners to deprive him of such share. They could neither do this, by sending the vessels out *privily*, without consulting him ; nor by an application to the admiralty, unless he refused his assent, on being notified of the voyage. If the part-owner do nothing to manifest dissent ; or if his co-owners institute no proceedings in the admiralty relieving him from the responsibilities and hazards of the voyage ; he is entitled to his share of the earnings. 2 *Pet. Adm. Dec.* lxvi, ii. n.   *Willings* & al. v. *Blight*, 2 *Pet. Adm. Dec.* 288.   *Westerdell* v. *Dale*, 7 *Term Rep.* 314. *Anon.* 2 *Chan. Ca.* 36.   *Anon. Skin.* 230.   *Strelly* v. *Winson*, 1 *Vern.* 297.   *Lex Merc.* 57.

4. That a bill in equity for an account, is the proper and only remedy. *Abbott Ship.* 80.   *Sto. Agen.* 42, 3.   Trover would not lie, in such a case, to recover the value of the shares owned by *Manice*. His co-tenants had a *right* to the possession. Trover will only lie against a co-tenant where there is a *destruction* of the property.   *Heath* v. *Hubbard*, 4 *East* 110.   The sale of the whole of a ship, by a part-owner, in exclusion of his co-owners, is not such a destruction of the ship as would enable such co-owner to maintain trover.   4 *East* 107.   But in this case, there has been no attempt to *sell*, by a part-owner, but only to *purchase* of a stranger the right of a part-owner.

5. That the actual net profits, as ascertained by the committee, constitute the rule of accounting.

The counsel for the defendants, contended, 1. That the title of the plaintiff in this property is not that of an absolute owner, but at best that of a mortgagee not in possession. The original conveyance from *Phelps* to *Manice* which is the foundation of the plaintiff's title, allowing its validity, simply gives an authority to *Manice* to take and hold this property as an indemnity to secure the payment of a debt due to him and his partner. The relation of vendor and vendee between *Phelps* and *Manice*, did not take place. *Manice* never took, or attempted to take, possession of these vessels.

New-London,
July, 1844.

Gould
v.
Stanton.

2. That a mortgagee of a vessel not in possession, is not liable for outfits and repairs. *Chinnery* v. *Blackburne*, 1 *H. Bla.* 117. n. *Jackson* v. *Vernon*, 1 *H. Bla.* 114. *Briggs* v. *Wilkinson* & al. 7 *B. & Cres.* 30. (14 *E. C. L.* 10.) *Annett* v. *Carstairs* & al. 3 *Campb.* 354. *Jennings* v. *Griffiths, Ry. & Moo.* 42. (21 *E. C. L.* 378.) *Frazer* v. *Marsh*, 2 *Campb.* 517. S. C. 13 *East* 238. *McIntyre* v. *Scott*, 8 *Johns. R.* 159. *Starr* v. *Knox*, 2 *Conn. Rep.* 222.

3. That if *Manice* was not liable for outfits and repairs, he is not entitled to a share of the profits; the liability for outfits and repairs and the right to earnings being reciprocal. This position is supported, not only by reason and natural justice, but also by most of the authorities already cited.

4. That the deed from *Phelps* to *Manice* conveyed no title whatever, being void as against the creditors of *Phelps;* first, for want of consideration; and secondly, under the statute of 1828.

5. That if the plaintiff has a good title through *Manice*, and has a right to call for an account, the correct course in taking such account, is, to ascertain the value of the plaintiff's interest in the vessels, and let him be paid for *that*. This will do justice to all parties, and put an end to what seems otherwise an interminable litigation. *Interest reipublicæ ut sit finis litium.* This may be done, in the present suit, under the prayer for general relief. *Sto. Eq. Pl.* 39, 40.

WILLIAMS, Ch. J. The defendants, in the first place, claim, that the plaintiff has not shown any interest in the vessels for the use of which he claims an account;

1. Because *Manice*, under whom he claims, had no title. It is stated in the plaintiff's bill, and not denied, that *Charles E. Phelps*, while in life, was the owner of $\frac{13}{64}$ parts of the ship *Charles Adams*, and the brigantine *Uxor*, engaged in the whaling business; and that, on the 16th day of *May*, 1833, he made a deed, which purported to convey to said *Manice* his interest in these vessels, together with other property of the said *Charles*. It also appears, that said *Charles* died, and soon after, *Benjamin Pomeroy* was duly appointed administrator on his estate, and as such, *Pomeroy* claimed said vessels, and sold all right and interest in them to the defendants, who claim, that standing in the place of the creditors of

*Charles E. Phelps*, they may treat this deed as void as to the creditors of *Phelps ;* and this upon two grounds,—want of consideration, and as fraudulent under the statute of 1828.

The plaintiff, on his part, claims, that it is too late now to make that question, it having been settled, by the circuit court of the *United States*, on a bill brought by *Pomeroy* against *Manice,* to set aside this deed.    The defendants object to this judgment as evidence against them, as they were not parties to it.    But their only title is derived from *Pomeroy*, who was party to the suit, and who was concluded by it, and with whom they are privy in estate.    *Co. Litt.* 271.    Besides which, they purchased while this suit was pending, and so purchased with constructive notice of that fact.    *Murray* v. *Ballou,* 1 *Johns. Ch. R.* 566.    Had the defendants purchased of *Pomeroy* real estate, for which an action of ejectment was pending, that judgment against *Pomeroy* would be conclusive against them in an action for mesne profits.    *Jackson* v. *Stone*, 13 *Johns. R.* 447.    *Vid.* 7 *Wend.* 152.    But here the defendants had actual notice of this litigation, and must have purchased with reference to it ; and could they now make this defence, there would be no end to litigation.    *Hopkins* v. *McLaren*, 4 *Cowen*, 667. 678, 9.    Had *Pomeroy* recovered in that suit, the defendants would have been quieted in the enjoyment of this property : it is therefore both just and legal, that they should now be concluded by it ; though in this case, it is enough to say, that the evidence of the record was admissible against them.

It is said, that the title to this property could not be established under the bill to set aside the deed, but there must be a cross-bill for that purpose.    The authorities read show, that it is common and proper to file a cross-bill in such cases ; but, we believe, there are none which go so far as to show, that if the court proceed, upon a bill to set aside a deed, to establish the title, without a cross-bill, that such decree would be void,—as the defendants must claim in this case.    And if that was even so, it would not follow, that the facts put in issue and found by the court, could be again contested.    In that suit, *Pomeroy*, the grantor of the defendants, made precisely the same claim that these defendants now make, that the deed was void for want of consideration, and also void by the statute of 1828.    If this was true, that court would have set the

New-London,
July, 1843.

Gould
*v.*
Stanton,

deed aside, as its existence would greatly affect the value of the property. The facts found, therefore, were highly important to the event of that suit. They were, that the deed was given for a full and valuable consideration, and without fraud. The facts thus found, those parties could not again litigate; and although in *Crandall* v. *Gallup*, 12 *Conn. R.* 365. we held, that that decree could not be pleaded as an estoppel, we also held, that as far as the court had found facts necessary to support their decree, so far the parties would be bound. 12 *Conn. R.* 373.

We think, therefore, in this case, that *Pomeroy* and those who claim under him, are not at liberty to contest those facts.

Were it necessary for us to go into the enquiry, however, we should come to the same result. This deed cannot be treated as a voluntary deed, though the nominal consideration of one dollar might not deliver it from that objection; but in addition, it is to pay the debts and liabilities of *Benjamin F. Phelps;* and this might have been founded upon a previous agreement to that effect. And in the absence of all testimony, were it necessary, this would be rather to be presumed, than to presume a fraud; at least, it furnishes *prima facie* evidence of a consideration, sufficient, in our opinion, to support the deed.

Nor do we see any ground for supposing that this deed is void by the statute of 1828, except such as applies to all deeds given by a person in view of his insolvency, in which one creditor is preferred to another. It is true, that the name of *Erasmus D. Foot* is introduced with that of *Manice*, as jointly liable for some of these debts. But this cannot change the character of this deed. It was not given in trust for him, but to pay the debts upon which *Manice* was responsible; and he was equally responsible, whether *Foot* was also upon them or not; though the effect of his responsibility might be to relieve him, in some measure, as is always the case where there is more than one surety. *Foot's* name is introduced rather as descriptive of the obligation, than as showing a trust for him.

It was also suggested, that the conveyance by *Manice* to *Gould*, being in trust, was also void by the statute of 1828, as the parties both lived out of the state, and no bonds were

ever given to the court of probate. To which it was said, that if this objection was valid, it could be made only by the creditors of *Manice;* and as we understood the counsel for the defendants to yield this objection, we notice it no further.

2. It was also contended, that whatever claim might have existed originally in favour of *Manice* or *Gould,* it was discharged by *Manice,* with the assent of *Gould,* by the writings of the 18th and 31st of *October,* 1837.

The release executed by *Manice* of the 18th of *October,* recites the mutual settlement of all suits and controversies between him and *Pomeroy;* and he covenants and agrees with *Pomeroy* not to sue or molest *him* in his person or estate, for any estate, or act in relation to any estate, of said *Phelps,* or for any property assigned by said *Phelps* to *Manice,* and to save him harmless therefrom: and *Gould,* by the writing of the 31st of *October,* gives his assent thereto. Now, although these writings are no release, yet as between the parties, they would be held to amount to a release, to prevent circuity of actions. It is however difficult to perceive how these defendants can claim they are a release to them, or that they amount even to a covenant not to sue them. The writings purport to be personal between the parties, and must have been so intended. They are similar to covenants not to sue a joint obligor or covenantor, which have been always construed not to be a discharge to such obligor or covenantor. *Dean* v. *Newhall,* 8 *Term R.* 168.    2 *Wms. Saund.* 148. n. *Catskill Bank* v. *Messenger,* 9 *Cowen* 37. In this case, *Pomeroy* is not a party, in name or in fact; nor is it shown he has any interest in the event of this suit. Could he then maintain any suit against *Manice* for prosecuting this action? What does he suffer, or how is he molested, we cannot see. And if he could not maintain an action on the covenant, it being a personal covenant, the defendants could not; and if there exists no cause of action upon the covenants, it is impossible for us to see how they can operate as a discharge.

3. The plaintiff then having an interest in these vessels, the remaining question is, can he recover for the use of them; and upon what principle is the account to be taken.

The business in which the vessels were employed, was the whaling business; and the mode of conducting it, is, that the owners, (consisting usually of a number of persons,) ap-

point some person, usually one of their number, to be manager
of the concern.    This person orders the necessary repairs,
furnishes the supplies, procures the seamen, in short, as ship's
husband, does all that is necessary for the voyage, charging
each share-holder his proportional part ; and upon the return,
after paying expenses and deducting the usual commissions
for his own services and advances, and paying the officers and
crew such proportions as they stipulated for, divide the bal-
ance, being the net proceeds, among the joint owners of the
vessel, in proportion to the number of shares by them respect-
ively owned,—much in the same manner as is customary in
*England.   Holderness & al.* v. *Shackels,* 8 *B. & Cres.* 612.
(15 *E. C. L.* 315.)    These agents, thus acting for the whole,
become responsible to those who may happen to be owners.
In this way, that delay and those conflicts of opinion are
avoided, which would arise from the meetings and consulta-
tion of such a number of persons as frequently have an inter-
est in these voyages.    This agent having been appointed by
a majority of the share-holders, is supposed to speak and act
the sentiments of the majority ; and in ordinary circumstan-
ces, that will must prevail.    And when a ship is sent out, by
a major interest, the minority must not only bear their pro-
portion of the expenses of the repairs, but must also lose their
part of the ship, if it should be lost on the voyage ; and this,
whether they were satisfied with the voyage or not.    For it
is considered to be for the interest of the country, as well as
of the ship-owners, that ships should be employed ; and it is
more reasonable that they should be employed at the will of
the majority, than that the minority should elect, or that they
should remain unemployed.    *Card* v. *Hope,* 2 *B. & Cr.* 661.
(9 *E. C. L.* 214.)    And it is a principle discernible in all
mercantile codes, that every encouragement and assistance
should be afforded to those who are ready to give to their ships
constant employment ; and this, not only for the particular
profit of owners, but for the general interest and prosperity
of commerce.    *Willings & al.* v. *Blight,* 2 *Pet. Adm. Dec.*
292.    The acts, then, of such agents, within the scope of
their authority, are the acts of the owners.    The repairs of
the vessel are repairs made for them ; the supplies are supplies
for them ; and the proceeds are proceeds to be divided among
them : for if it be true, that he who is entitled to the profits,

must bear the burthen, it is equally just that he who bears the burthen, should be entitled to the profits.

Had *Phelps* then lived, and not given the deed to *Manice*, he would have been entitled to an account of profits from the ship's husband. It would seem to follow, that when it was decided, that the plaintiff had the title of *Phelps*, he also must have a similar right, unless he has done some act to forfeit it.

The defendants, however, insist, that if the deed to *Manice* is good and valid, yet it does not give the plaintiff an absolute title ; that he gained only the title of a mortgagee ; and that he has never been in possession ; and so is neither liable for repairs, nor entitled to profits. Many authorities have been adduced in support of the latter proposition ; and whatever doubts may have once existed, we think that this point is too well settled, at the present time, to require support.

But before that principle is applicable to this case, we must require some proof that this is a mortgage. It purports to be an absolute conveyance for a specific purpose. It gives an absolute power to sell and apply ; it speaks of no redemption ; and it contemplates none. The surplus, if any, is to be paid over to the assignor : so it is in every deed of trust. So far, therefore, there is no feature of a mortgage, but such as attends every deed of trust. But as a part of the consideration is responsibilities not yet assumed by *Manice*, if he should never assume them, and *Phelps* should himself pay the debt, if a court of chancery might, in such case, treat this as a mortgage, we apprehend that this would make no difference in the construction which we are now to give to this instrument. It is enough to say, that in form it is not a mortgage ; that the parties did not contemplate a mortgage ; and that the only event which would lead a court of chancery to treat it as such, has not occurred. When then Judge *Thompson* said, this deed was in nature of a mortgage, he did not mean to say, it was a mortgage, but merely to say it might be compared to a mortgage, as it had some of the incidents of one. "Nothing," says Lord *Mansfield*, " is more apt to confound than a simile. When the court or counsel call a mortgagor a tenant at will, it is barely a comparison : he is like a tenant at will." We know of no authority, therefore, for calling this conveyance a mortgage.

New-London,
July, 1843.

Gould
v.
Stanton.

But if it was a mortgage, we are not prepared to say, that *Manice* was never in possession. His deed from *Phelps* is dated the 16th of *May*, 1833 ; and, as we have seen, was intended to convey an absolute title. *Pomeroy* brought his bill for an injunction on the 10th of *August* following. Now, who had possession from the date of the deed until that time, or until administration taken out ? Not *Phelps*, surely ; for he claimed nothing after the deed ; and *Pomeroy*, of course, could have no right before administration granted ; and it is not shown that he took possession afterwards. The possession, therefore, must have been holden by those who had actual possession, for the benefit and in behalf of those who had the right of possession, in whom the title was. *Abbott*, in his treatise on *Shipping*, says, when a part-owner of a ship not in actual possession, conveys, the possession of the other part-owners may reasonably be considered the possession of the vendee. *Abbott* 6. And the court said, in *Clark* v. *Richards*, that by the transfer of the vessel, the instrument being a genuine one, the title was in the vendee. 1 *Conn. R.* 54. There was, then, a time, when *Manice*, having the title, and no one claiming possession against him, must have been considered and treated as an owner in possession ; and if he has once taken possession under him in whose right he claims, he is not in the situation of the mortgagee to whom possession has never been delivered. The argument of the defendants must be, that if he once had possession, that possession did not continue in him. That he has relinquished voluntarily, is not claimed ; nor is it claimed, that the defendants have had any other possession of the vessel than they would have had, if this purchase had not been made. As part-owners in actual possession, they held for themselves and others, who were owners with them. Before the sale, they did not claim to hold or possess the $\frac{11}{64}$ths of *Charles Phelps*, except for the rightful owner. The injunction prayed out by *Pomeroy*, could not change the possession then existing : the only object of the injunction was, to prevent an improper use of it. *Pomeroy* having no actual possession, his sale could confer none, unless he had a title. But as he had no title, his sale conveyed nothing, neither title nor possession. If then the possession is changed, it must be merely because the defendants, being in possession as part-owners, having purchased in

New-London,
July, 1843.

Gould
v.
Stanton.

a worthless title, and claiming under the whole right, must by law be treated as in possession of the whole. Now, if a tenant in common will not suffer his co-tenant to enter upon, demand and claim a right to the whole property, his co-tenant may treat it as an ouster; but it will not deprive him of the right to an account, in the same manner as if he had not been ejected. So here, if the plaintiff was a mortgagee and never in possession, he could not demand an account; yet if he has once taken possession, the wrongful act of the defendant cannot deprive him of the right, which, under the possession, he acquired of calling them to account. We think, therefore, that the plaintiff has a right, whether considered as mortgagee, or as absolute owner, to an account.

It is said, however, that the plaintiff and *Manice* have both lain by, taking no part in advancements or supplies for the voyage; that they are mere drones in the hive; and can, therefore, have no share in the honey. If the plaintiff is owner, we think he has the rights and is subject to the duties of an owner; and we have only to see what those are. And it is a general regulation in all commercial countries in relation to ships, that the majority in value shall direct their employment. If the plaintiff, therefore, took no part in the voyage, he submitted to be governed by the decision of those who did. If he was not willing to do this, he might apply to a court of admiralty, who would cause a valuation to be made, and require such security as would indemnify the dissenting owner, in case of loss. If such dissenting owner neglects these precautions, the vessel, so far as he is owner, sails as his; and he is liable to all the consequences which may flow to an owner. Such is the doctrine of our own court, in *Williams* v. *Sanger*, 2 *Conn. R.* 220. The plaintiff then, although he was not active in this voyage, run the risk of the loss of his interest, because he did not take the course pointed out by law for relief. Indeed, as he took no active measures of dissent, he may be considered as assenting. " If one part-owner dislike the voyage, and doth not expressly prohibit navigating the ship, and the ship go the voyage, and is lost, in such case he shall not be answered his part; but if the ship returns, he shall have an account for what is earned; and it shall be intended a voyage with his consent, without an express prohibition proved." *Anon. Skinner* 230. *Strelly* v. *Winson*, 1

New-London,
July, 1843.

Gould
v.
Stanton.

*Vern.* 297. What effect a protest or an express dissent, by a dissatisfied owner, might have, in a court of chancery, or by foreign maritime laws, it is not necessary to enquire, as no such facts exist here. See *Horn* v. *Gilpin, Ambl.* 255. The safest course is to apply to the admiralty. *Jacobsen's Sea Laws,* 44. For, from a remote period this has been a well settled practice of the court of admiralty in *England. Lambert* v. *Aeretree,* 1 *Ld. Raym.* 223. *Anon.* 2 *Chan. Ca.* 36. Opinion of Sir *L. Jenkins,* 14 *Petersd. Abr.* 640. n.

And on the other hand, if the major owners are not satisfied with the condition in which they are placed, they also have a right to apply to the court of admiralty to give security for the ship; and then, if she be lost, they shall be discharged against the others. *Anon. Skinn.* 230. In this case, as there was no express dissent by the plaintiff, and neither party made application for security to a court of admiralty, it may fairly be presumed, that they intended to stand upon their respective legal rights.

It was said, that by the terms of the deed from *Phelps, Manice* had no right to employ the ship to make a whaling voyage. This is an objection which comes with an ill grace from the defendants, claiming under *Pomeroy,* by whose act such a shade was cast over the plaintiff's title as would almost make a sale impracticable. It is a sufficient answer, to say, that there is nothing in the deed expressly forbidding it; and that these defendants are not the persons to call the plaintiff to account for the manner in which he discharges his trust.

The conclusion then to which we have arrived, is, to advise the superior court to accept the report of the committee.

In this opinion the other Judges concurred.

Decree for plaintiff.