Follett v. The People.

———————

FOLLETT and others, canal commissioners, &c. *vs.* THE PEOPLE of the state of New-York.

The duty of keeping the bridges over the Albany basin in repair was never assumed by the pier owners. Or if it was assumed, the pier owners were relieved from that burden by the act of the legislature of April 4, 1849, by which the rights of the parties were changed, and declared anew.

The bridges over the Albany basin belong to the state, and are under the control of the canal commissioners; as much so as any bridge crossing the Erie canal.

And if one of these bridges is out of repair, and in a dangerous condition, so as to be a public nuisance, it is the duty of the canal commissioners either to remove or to repair it; and for neglecting or refusing to do so, an indictment lies against them.

Although the canal commissioners may be authorized, in the exercise of the discretion vested in them, to decide that the public convenience no longer requires that such bridge should be continued, yet if they have such power, it is at least their duty to *remove* the bridge, after it becomes a nuisance. *Per* HARRIS, J.

ERROR to the Albany mayor's court. The plaintiffs in error were indicted in the mayor's court, for a nuisance, for not keeping in repair the bridge over the Albany basin, at the foot of Columbia-street. Upon the trial, it was admitted by the defendants in the indictment that the bridge was out of repair, and in a dangerous condition, and had so been for the space of thirty days; that it was a public bridge, and was erected about the year 1825, in pursuance of the provisions of an act of the

legislature, entitled "An act authorizing the construction of a basin in the city of Albany," &c. passed April 5, 1823. The trial was had on the 18th of May, 1853. On the 4th of April, 1849, an act was passed by the legislature, the object of which was to satisfy the city of Albany for certain expenses incurred in excavating and cleansing the basin, and also to extinguish the right of the pier owners, under the act of 1823, to canal tolls. (*Sess. Laws* 1849, *p.* 311.) By the 9th section of that act it is declared, that "the basin shall be owned by, and remain the property of this state, and be under the care and charge of the canal commissioners;" and further, that "the owners of the said pier shall forever hereafter keep the said pier in good repair, to the satisfaction of the said commissioners." The testimony being closed, the counsel for the defendants requested the court to charge the jury, that by the terms and conditions of the act of 1823, and the several acts amending the same, the pier proprietors were required to build and maintain the Columbia-street bridge over the basin, and this duty was not changed, or in any manner affected, by the act of 1849. The court refused so to charge, and the defendants' counsel excepted. The counsel for the defendants also requested the court to charge, that the act of 1849 was unconstitutional and void, and, whatever might be the effect of its provisions, it was not binding on the defendants, and it did not impose any duty which they were bound to perform. The court refused so to charge, and the defendants' counsel excepted.

The court directed the jury to find the defendants guilty of the offense charged in the indictment, and the defendants' counsel duly excepted. The jury having rendered a verdict of guilty, the defendants' counsel tendered a bill of exceptions, and brought their writ of error to this court.

*L. S. Chatfield,* for the plaintiffs in error.

*J. H. Reynolds,* for the defendants in error.

Follett *v.* The People.

*By the Court,* HARRIS, J.   The act of 1823, (*Sess. Laws* 1823, *p.* 128,) was, in legal effect, a contract between the state and the commissioners oppointed by the first section of the act, whereby, in consideration that the commissioners would construct the pier therein described, and erect the bridge specified in the 4th section of the act, and would also construct the sloop lock mentioned in the 9th section, the state would grant to the commissioners, by letters patent to be issued by the commissioners of the land office, the land occupied by the pier and sloop lock, "subject to such reservation or condition as is mentioned in the act." Upon receiving the grant the commissioners were required to divide the pier into lots, and sell them at public auction, "subject to the reservations in the act contained," and distribute the proceeds in the manner prescribed by the 7th section of the act.   The only conditions or reservations mentioned in the act are, that no toll shall ever be exacted from any person passing over the bridges, nor any wharfage or charge from canal boats, &c. using the waters of the basin; that a certain space on the east side of the pier shall be kept open as a passway, and that the state should have the right, upon the repayment within five years of the amount expended, to extinguish the grant.   With these qualifications, the title of those who purchased from the commissioners became absolute.   It was no part of the conditions upon which the purchasers took their title, that they should keep the bridges, or even the pier itself, in repair.

As a further consideration for the expenditure to be made by the commissioners, the state agreed to charge tolls upon all boats, &c. entering the basin, regarding it as a part of the canal, and to pay the tolls so collected to such person as should be authorized by a majority of the owners of the pier to receive the same.   It was made the duty of the person receiving these tolls, to pay therefrom the expenses of "attending the sloop lock and draw bridges, and for necessary repairs of the lock and pier, and to distribute the *residue* among the pier proprietors."

There is nothing in the act of 1823 which indicates an intention on the part of the legislature to require that the commis-

sioners or their grantees, after having constructed the bridges, as provided by the 4th section of the act, should keep them in repair. No such condition or reservation is contained in the grant; no such expense is charged upon the tolls to be received. The fact that express provision is made for defraying the expenses of keeping in repair the pier and sloop lock, and even for attending the locks and draw bridges, justifies the conclusion that it was not intended to impose upon the pier proprietors this further duty. In short, the duty of repairing the bridges is no where enumerated among the obligations of the pier proprietors. The act being a contract between the state and the proprietors, is to be construed according to the terms in which the duties and obligations of the parties are expressed. It is a familiar rule of interpretation, which requires us to hold that the very fact that specific duties, to be performed by the proprietors, are specified in the act, excludes the right to impose others by implication. *Expressio unius, exclusio alterius*. So the act of 1825, by which the state surrendered its right to extinguish the title of the pier proprietors, reiterates the duty of keeping the pier and sloop lock in repair; but, like the act of 1823, it is silent in respect to an obligation to repair the bridges; and again, in the act of 1849, when the state purchased of the pier proprietors their interest in the tolls, the legislature, inasmuch as the fund upon which the repairs to the pier were chargeable was to be now extinguished, imposed upon the pier proprietors the duty of keeping the pier in good repair, to the satisfaction of the canal commissioners. This duty was then assumed by the pier owners as one of the conditions of the new contract into which they then entered with the state. Is it to be believed that if the legislature had intended that the pier proprietors should keep the bridges in repair, as well as their own pier, it would not have been so declared?

I am aware, that in *The People* v. *Cooper*, (6 *Hill*, 516,) it was held that the pier owners were bound to keep the bridges in question in repair. A reference to the opinion in that case will show that it received but slight considerations at the hands of the distinguished judge by whom it was pronounced. The

Follett *v*. The People.

history of the case, too, is such as I think may justify me, without incurring the imputation of temerity, in examining the positions upon which the judgment was founded. Mr. Justice Bronson took no part in the decision, being an owner of real estate in the city of Albany. The argument was heard by Chief Justice Nelson and Justice Cowen, at the January term, 1844, and, in February following, Justice Cowen died. The decision was pronounced at the following May term, by the chief justice, alone. That learned judge assumes that as it was made a condition of the grant that the commissioners should erect the bridges, an obligation to keep them in repair so long as the grant continued, was to be inferred. But with great deference, I must be allowed to say, that I cannot see that this inference is justified by the premises. It was agreed between the state and the commissioners that, among other things, the latter should construct certain bridges, and in consideration thereof that they should receive a grant of certain land. It may be presumed, I suppose, that both parties understood that, after the construction of the bridges, according to the terms of the contract, they would, in time, require repairs or renewal. As this new duty was not provided for in the contract, I understand that no obligation for its performance can be inferred from any thing else contained in the act. I cannot see why the pier owners are under any more obligation to keep these bridges in repair than any other contractor who has constructed a bridge across the canal, for the state, and received therefor the consideration for which he stipulated. The idea of "a continuing condition to repair, coextensive with the grant itself in point of duration," is not to be found in the terms of the act, which was the contract by which the parties agreed to be bound. My inference, therefore, is, that the obligation to repair rests precisely where it would have rested had no contract been made between the parties. The bridge crosses a portion of the canal owned by the state, and in all such cases, unless some contract is made to the contrary, the duty of repairing devolves upon the state.

But the learned chief justice thinks that if the obligation to

repair had been left in doubt by the act of 1823, the question should be regarded as having been put at rest by the act of 1835, for the improvement of the basin. By the terms of that act, the city of Albany was authorized to widen the draws in the bridges, and it was declared that if the bridges should be increased in value, the amount of such increased value should be paid by the pier owners; and that after these improvments should be made, the bridges should be maintained, kept in repair, and tended in the same manner as they then were required by law to be tended, kept in repair and maintained. In respect to this ground of discussion, it is perhaps enough to say, that the act of 1835 itself has, since the judgment in *The People* v. *Cooper* was pronounced, been declared unconstitutional and void. And besides, the act does not profess to impose upon the pier proprietors the duty of repairing. It merely declares that, notwithstanding the improvements to be made under the provisions of that act, the bridges should be maintained and kept in repair in the same manner as they had been before. If the duty of repairing had not before been imposed, it certainly was not by the act of 1835. It is clear that the legislature intended nothing more than to leave the obligation to repair the bridges unchanged. And even if the legislature had intended to change it, so as to make it the duty of the pier owners to keep the bridges in repair, it is obvious that this could not have been done without their consent.

The chief justice has also added, at the conclusion of his opinion, that when the case of *Smith* v. *The Comptroller* (18 *Wend.* 659) was before the court, the obligation of the pier owners to repair the bridges was not doubted. That case was heard at special term by Mr. Justice Cowen. What his views may have been in respect to this question, I do not know. It was not then before him. The question then in judgment was, whether the pier owners were bound to excavate and cleanse the basin. The opinion delivered in that case will be searched in vain for the slightest intimation that the pier proprietors were obliged to keep the bridges in repair; on the contrary, unless I have wholly misconceived the argument, by which the court was led

Follett *v.* The People.

to the conclusion that no such obligation as that then claimed, rested upon the pier proprietors, it is equally applicable to the question now under consideration.   After referring to the words of the act of 1823, providing for the expense of attending the lock and draw bridges, and the repairs of the lock and pier, Mr. Justice Cowen proceeds to say : " The state appears to have been perfectly conscious that it had left *no other* duty to be performed by the proprietors.   Instead of any where intimating an obligation to deepen, excavate or cleanse the basin, it retains the fee as a part of the canal."   And again he says : " No duty on the part of the proprietors to deepen, excavate, cleanse, or otherwise repair the bed of the basin, is derivable from the express words of the statutes, or fairly to be implied from their words, or the system or scope of their provisions, and no common law duty can be inferred contrary to what is a plain bargain between the state and the proprietors.   I clearly understand that bargain to be, in short, that the pier proprietors shall perform the duties *enumerated,* which do not comprehend, but *exclude* by plain implication, the obligation in question."   I am quite unable to see why these views, conclusive as they were upon the question then before the court, are not equally applicable and conclusive upon the question now presented.   It is not pretended that the obligation to repair the bridges is among the enumerated duties of the proprietors.   " In the new bargain" made between the state and the pier proprietors, in 1849, the rights and obligations of the parties are again declared, but there is no allusion to any *continuing* obligation to keep the bridges in repair.

I can see no reasonable ground for saying that the act of 1849 was unconstitutional.   The basin had been, from the time of its construction, a part of the Erie canal.   Tolls had been collected for its use as such.   The state had made a special contract with the pier commissioners, by which, for their services in constructing the basin, they were to receive, among other things, the tolls received by the state for boats, &c. passing through the basin.   By the act of 1849, the state proposed to purchase of the pier proprietors their interest in these tolls.

From the very nature of the case, the act could not become operative without their assent. They had a vested interest which could not be divested against their will. As the law was to operate as a contract between the state and the city of Albany and the pier owners, it was proper that it should provide for obtaining the consent of those parties before it should take effect.

I am of opinion, therefore, first, that the duty of keeping the bridges over the basin in repair, was never assumed by the pier owners. And secondly, if prior to the passage of the act of 1849, this question was to be regarded as *res judicata*, by reason of the decision in *The People* v. *Coooper*, then that by the act of 1849, by which the rights of the parties were changed and declared anew, the pier owners were relieved from this burden. If this be so, it follows that the court below was right in refusing to charge that, by the terms and conditions of the act of 1823, and the several acts amending the same, the pier proprietors were required to maintain the bridge in question, and that such duty was not changed or in any manner affected by the act of 1849.

The remaining question is, whether the canal commissioners were bound to repair. The bridge belongs to the state. It was built under the direction of the canal commissioners, and because they were of the opinion that the public convenience required it. It stands upon the soil of the state, and is as much and as exclusively under the control of the canal commissioners, as any other bridge crossing the Erie canal. No man, without the authority of the commissioners, would have the right to remove or alter, or even repair it. The attempt would be a trespass. I cannot doubt, therefore, that it is the duty of the canal commissioners, representing, as they do, the state, either to remove or to repair it.

The act in relation to bridges over the enlarged Erie canal, makes it the duty of the canal commissioners to construct and maintain, at the public expense, road and street bridges over the enlarged Erie canal, in all places where such bridges had previously been constructed, if, in their opinion, the public

Follett *v.* The People.

convenience requires that they should be continued, whether the same had before been maintained at the expense of the state, or the towns, cities or villages where they are situate. (*Sess. Laws* 1839, *p.* 188, § 1.) It was said upon the argument that, inasmuch as the obligation to repair is made to depend upon the opinion of the canal commissioners as to the necessity of constructing the bridge, an indictment will not lie for the non-performance of the duty, resting, as it does, in the discretion of the commissioners. The principle upon which this argument is founded is undoubtedly sound. It is a general rule that, where the performance of an act is referred to the discretion of a public officer, he cannot be controlled in the exercise of such discretion. But the principle is not applicable to this case. The bridge was erected because the canal commissioners had directed that the public convenience required it. It was admitted upon the trial to be out of repair, and in a dangerous condition. I will not say that the commissioners may not be authorized in the exercise of the discretion vested in them, to decide that the public convenience no longer requires that it should be continued. But if they have such power, it is at least their duty *to remove the bridge.* It cannot be that they may, with impunity, leave it standing in its present dilapidated, dangerous condition, constituting, what it has been alleged to be, a public nuisance. There was no error, therefore, in the instruction given by the court below to the jury, that, upon the admitted facts of the case, the indictment was sustained. I am of the opinion that the judgment should be affirmed.

[ALBANY GENERAL TERM, September 5, 1853. *Watson, Wright* and *Harris,* Justices.]