SCULL and others v. RAYMOND and others.

(*District Court, S. D. New York.* November 20, 1883.)

1. SHIPPING—PART OWNER DISSENTING, NOT LIABLE FOR TORTS OF THE VOYAGE.
    A part owner of a vessel whose title is denied by the other part owners, and who is excluded by them from all participation in the management of the vessel and profits of her voyages, is not personally liable for damages caused by a collision upon one of her voyages, as to which he has also given express notice of his dissent.

2. SAME—BOND OR STIPULATION.
    Though a bond or stipulation with sureties, obtained by libel in the admiralty from the other part owners for the safe return of the vessel, is necessary to secure to the dissenting part owner the preservation of his interest in the vessel unimpaired, it is not essential to his exemption from personal liability where he has disclaimed all interest in the voyage by express notice of dissent, and has never ratified or adopted it as his own.

3. SAME—CLAIMS FOR REPAIRS.
    Analogous cases of claims for repairs or torts, where the vessel is chartered or mortgaged, considered.

4. SAME—LIABILITY OF PART OWNER.
    In cases free from circumstances creating an equitable estoppel, the liability of a part owner for repairs, supplies, or torts depends upon the relation of master and servant, or principal and agent, existing between him and those in immediate control of the ship.

5. SAME—STATUTE OF LIMITATIONS.
    *Semble,* the statute of limitations is followed by analogy in admiralty, as in equity, where no special equitable reasons exist against its application.

6. SAME—LIBEL IN PERSONAM BARRED.
    Where the defendant was a well-known merchant, accessible daily, and a libel *in personam* was filed eight and a half years after the cause of action accrued, *semble,* it should be held barred in admiralty, though ineffectual proceedings *in rem* for the satisfaction of the same claim had been pending during most of that period.

7. SAME—SUIT IN REM—INTERVENTION OF PART OWNER.
    Intervention of a part owner as a claimant in a suit *in rem,* and his defending against a claim for a collision, is no ratification of the acts of the master or adoption of the voyage, such as to make him personally liable for the damages of those injured by a collision.

This action was brought against the owners of the steamer Zodiac by the owners of the schooner William Wallace, to recover their damages sustained through a collision of the schooner with the steamer on the sixth of October, 1872.

On October 11, 1872, a libel *in rem* was filed in this court against the steamer, and upon trial the steamer was held liable on June 29, 1877, and a final decree was rendered for the libelants on January 31, 1880, for $1,153.90 damages. The vessel was arrested at the commencement of the action *in rem,* and was released upon a stipulation given by the New York & Newbern Steam-ship Company, claimants and part owners. The defendant Raymond also put in an appearance as claimant, but did not execute the stipulation, and the stipulation given was not given for his benefit. Upon execution, nothing being recovered from the stipulators or their sureties, this

libel *in personam* was filed April 12, 1881. See further facts in *The Zodiac*, 5 FED. REP. 220.

The defendant Raymond alone defended in this action.

About a year previous to the collision the defendant Raymond had taken a bill of sale of thirty-eight one-hundredths of the vessel from Mrs. C. Trowbridge, partly in payment and partly as security for a debt from her. The steamer was at the time in the possession and under the exclusive control and management of the other defendant, the New York & Newbern Steam-ship Company. The latter, claiming that the former part owner had no equitable interest in the vessel, by reason of the unpaid charges against her share being in excess of the value of her interest, refused to recognize Raymond as taking any right or interest under the bill of sale to him, or as having any part in the management of the vessel or any interest in her earnings. The steamer ran between New York and Newbern, making a trip about every two weeks. In June, 1872, having failed to obtain any recognition of his claims, or any account from the company, or the ship's husband in New York, in regard to her voyages or earnings, Raymond commenced a suit against them for such an account. A defense was interposed denying his interest; but the steam-ship being subsequently lost, the suit was never brought to trial. After the commencement of that suit, and before the collision, Raymond gave notice dissenting from the steamer's voyages, and there was oral evidence tending to show that he gave written notice of such dissent to the particular voyage on which this collision occurred. Subsequently he obtained in this court stipulations for the safe return of the vessel. He never acquired any practical voice or recognition in the management or control of the ship, nor any benefit from her voyages, but was always wholly excluded therefrom by the other part owners.

*Owen & Gray*, for libelants.

*John Sherwood*, for defendants.

BROWN, J. To make one man answerable for the torts of another they must stand to each other in the relation of master and servant, or of principal and agent, in some of its varied forms, so that the maxim *respondeat superior* applies. Story, Ag. §§ 452, 453; 1 Pars. Shipp. & Adm. 106; *The Druid*, 1 Wm. Rob. 391, 398. Upon the facts in the present case, however, the defendant Raymond stood in no such relation to the master of the vessel upon the voyage during which the collision occurred. The master was in the employment and under the direction of the other part owners exclusively. The defendant Raymond was intentionally excluded from all participation in the management of the vessel and from all benefit of her voyages. Even his title as part owner was denied. After June, 1872, he never adopted the voyages as his own, and he never ratified the appointment of the master on this voyage. He claimed no benefit from the voyage, but previously gave express notice of his dissent,

thereby disclaiming all interest in the voyage. Sea Laws, (3d Ed.) 442, 443; *Willings* v. *Blight*, 2 Pet. Adm. 288, 291; 1 Pars. Shipp. & Adm. 99. Under such circumstances the other part owners are, in my judgment, to be deemed to be in the situation of sole owners *pro hac vice*, and the sole principals responsible for the master's torts of navigation, as well as for his contracts on the voyage. 1 Pars. Shipp. & Adm. 125, 126.

As the libelants, however, strenuously contend that the defendant is liable in consequence of his being a legal part owner, some further considerations may be stated sustaining the above conclusion.

The primary relation of part owners of ships to each other is that of tenants in common of chattels. By the common law one tenant in common having possession of a chattel may use it for his own exclusive benefit, and while doing so he alone is liable for all charges affecting it. This rule, as applied to ships, has been so far modified as to entitle each part owner to receive his share of the earnings of the vessel, unless he has dissented from the voyage. *Prima facie,* therefore, the master, or ship's husband, or the managing owner, is the agent of all the part owners in the ordinary business of the ship, and all will be *prima facie* liable for necessary repairs, supplies, and for torts of navigation, because presumptively the voyage is for the benefit of all. Story, Ag. §§ 39, 40; *The Two Marys,* 10 Fed. Rep. 919, 923. But this presumptive agency and benefit, and consequent liability, may be rebutted by any appropriate proof. And when it affirmatively appears that any one part owner was neither intended to be represented by the master in the navigation of the ship or in ordering repairs or supplies, and that he never authorized the master to represent or bind him, and that he never ratified or adopted the voyage, but dissented from it, there is no reason or legal principle upon which he can be held for the supplies ordered, or for the torts of the voyage. Per SHAW, C. J., in *Sproul* v. *Hemmingway,* 14 Pick. 1. Cases of material-men furnishing supplies on the supposed credit of former known owners with whom they have dealt, without notice of change or dissent, involve questions of equitable estoppel which have no application here. In this case, the liability of this part owner for a collision, *i. e.*, for a tort, depends upon the actual fact whether the captain on the voyage was or not his agent and representative in the navigation of the ship.

Although I have not been referred to any authorities directly determining the liability of an excluded and dissenting part owner for torts of the voyage, where no bond or stipulation for safe return has been obtained, there are several analogous classes of cases which all concur in absolving such a part owner from liability. If a part owner expressly dissent to repairs or supplies, he is not personally bound. The implied authority of the master to bind him is in such cases rebutted by proof of the dissent; and if the material-man had no previous dealings with the dissenting owner, the notice of dissent need

not even be brought home to him. *Brodie* v. *Howard*, 17 C. B. 109, 121; *Frazer* v. *Cuthbertson*, 6 Q. B. Div. 93. So, where a bond is taken by a dissentient part owner for the safe return of the vessel, this is conclusive evidence that such part owner is exempt from any personal liability or charge for the voyage. "The ship sails wholly at the charge and risk and for the profit of the others." Abb. Shipp. *100; Macl. 100; *The Marengo*, 1 Low. 52; *Anon.* 2 Ch. Cas. 36; *Coyne* v. *Caples*, 8 Fed. Rep. 638. So a mortgagee, though holding the legal title of the ship, if he has not the possession and use of her, is by the well-settled American law not personally liable for her supplies or her torts, (3 Kent, *135; 1 Pars. Shipp. & Adm. 129; *Thorn* v. *Hicks*, 7 Cow. 697; *Leonard* v. *Huntington*, 15 Johns. 298; *Jackson* v. *Vernon*, 1 H. Bl. 114;) and so in cases of a nominal owner holding the title in trust only for others who have the use and control of the ship, (*Macy* v. *Wheeler*, 30 N. Y. 231, 241.)

The same principle is applied most frequently in the case of charter-parties, where if the contract devolve the whole possession and control of the ship for the voyage upon the charterers, the captain is treated as the agent of the latter and not of the legal owners, and though the ship may be bound, the owners will not be personally answerable for the captain's torts, or for faults of navigation, or for supplies furnished. In *The Neversink*, 5 Blatchf. 541, Nelson, J., says: "I lay out of view the general owner, because the master was not his agent and could bind him by no act of his. He could bind only the vessel and the charterers." The authorities to the same effect are numerous. 1 Pars. Shipp. & Adm. 278, 281; Abb. Shipp. *57; Story, Ag. § 453; 3 Kent, *138; *Marcardier* v. *The Chesapeake*, etc., 8 Cranch. 39, 50; *Webb* v. *Peirce*, 1 Curt. 104; *The Golden Gate*, Newb. 308, 313, 314; *Vallejo* v. *Wheeler*, Cowper, 143; *Newberry* v. *Colvin*, 7 Bing. 190; 1 Clark & F. 283; *Stedman* v. *Feidler*, 25 Barb. 605; 20 N. Y. 437; *Thorp* v. *Hammond*, 12 Wall. 408; *Richardson* v. *Winsor*, 3 Cliff. 395, 406; *The Phebe*, 1 Ware, 266; *The India*, 16 Fed. Rep. 262. In such cases the phrase describing the charterers as "owners *pro hac vice*" is merely a convenient expression indicating that the charterers stand in the place and in lieu of the legal owners, and with their responsibilities, though the latter remain none the less the legal owners of the vessel.

These several classes of cases show one principle running through them all, namely, that the personal liability of a part owner does not necessarily attach as an incident to his naked legal ownership, but depends upon the possession, use, and control of the ship; and that he only is to be deemed liable as principal whose agent the master is in the navigation of the ship, and who has some direct control or interest in the voyage. Per Sutherland, J., in *Thorn* v. *Hicks*, 7 Cow. 698; *Tuckerman* v. *Brown*, 17 Barb. 193, per Harris, J., and cases before cited.

Where one part owner, therefore, as in this case, is not only de-

liberately excluded by the others from all participation and interest in the voyage, but acquiesces in such exclusion from the particular voyage by dissenting from it, and the vessel is managed exclusively by the others for their own benefit, the latter, by virtue of their sole control, possession, and use of the ship upon such a voyage, are owners *pro hac vice,* and as such should be held solely responsible personally for the captain's acts in the navigation of the ship.

The same principle which absolves the legal owners from liability where the charter transfers to the charterers the sole possession of the ship and the control of her navigation, applies equally to the transfer of the possession and control of the vessel by some part owners to the other part owners, or to the master, for the benefit of the latter. *Hallet* v. *Col. Ins. Co.* 8 Johns. 209, 212; *Thorp* v. *Hammond,* 12 Wall. 408; *Webb* v. *Peirce,* 1 Curt. 104. In such cases the master, or part owners in possession, are deemed the owners *pro hac vice;* and it makes no difference in the application of this principle whether the exclusive possession and benefit of the voyage are obtained by a voluntary transfer from the others, or by a proceeding of one part owner in a court of admiralty to disclaim all interest in the voyage and take a stipulation for the safe return of the vessel; or whether the other part owners, by their own act, wrongful though it may be, appropriate to themselves the exclusive direction and control of the ship and the benefit of the voyage, provided it also appear affirmatively that the excluded part owner acquiesces therein; or, as in this case, dissents from the particular voyage, so that it can in no way inure to his benefit.

The excluded part owner, instead of dissenting, may stand upon his legal rights and claim the benefit of the voyages made, if he chooses to do so; and if he give no express notice of dissent, and he be wrongfully excluded, it has been held to be presumed that he intends to stand upon his legal rights, and to claim, as he may do, that the voyages have been upon his account. *Anon.* Skinner, 230; *Strelly* v. *Winson,* 1 Vern. 297; *Gould* v. *Stanton,* 16 Conn. 12. Any acts involving a ratification or adoption of the voyages as his will make him answerable for the torts of the vessel, as well as for her supplies, during such voyages. Very slight acts indicating an intention to insist upon his right to the benefit of the voyages will doubtless be sufficient to charge him with responsibility. *Davis* v. *Johnson,* 4 Sim. 539, 543; 1 Pars. Shipp. & Adm. 128. But where the evidence shows that the excluded part owner not only claims no benefit from the voyage, but has dissented, I see no reason or principle of law upon which he can be held liable as principal.

In the present case the defendant Raymond, by the suit brought in June, 1872, for an account of profits of the vessel, clearly adopted and claimed the benefit of her previous voyages. He thereby made those voyages his own. After that date the evidence shows that he adopted a different course, and gave notice of his dissent to the voy-.

ages of the vessel, and finally procured in this court bonds for her safe return. No acts of the defendant are shown by which he ever claimed any benefit in the voyages of the vessel, or in any manner adopted or ratified them after June, 1872. There is evidence that notice of his dissent was served as to the particular voyage upon which this collision occurred. These notices, however, which were in writing, were not produced, and evidence was given that they could not be found. If the proof in this respect was not of the most satisfactory character, I think it may justly be set down to the long time that has elapsed, namely, 11 years, since the transaction.

And this fact stands in direct relation to the second defense, namely, that the claim is stale, the suit not having been commenced until eight and a half years after the collision; and if the suit is not to be dismissed on the ground of the staleness of the claim after such a lapse of time, then the evidence in regard to notice of dissent must be held sufficient, and as good as could be expected to be produced under such circumstances. Not only does Mr. Raymond testify emphatically that these notices of dissent were served before the collision, but Mr. Fowler says that he remembers that when he heard of the collision he was glad he had given such notice for that particular voyage.

The libellant contends that a part owner can only be relieved through taking a bond in the admiralty for the safe return of the vessel. "When this is done," it is said, "the dissentient part owners are released." Abb. Shipp. *100; Macl. 100. I do not perceive, however, that the taking of a bond can be essential to the owner's exemption, provided it be made to appear otherwise that the voyage is not for his benefit, but for the benefit of the other part owners only. Lord TENTERDEN (Abb. Shipp. *100) proceeds to say: "It is incumbent on the minority to have recourse to such proceedings as the best means of protecting their interests, or, if they forbear to do so, at all events *they should expressly notify their dissent to the others.*" From the last clause quoted, it would seem to be clear that the taking of a bond, so far as respects personal liability, was merely regarded as the best and most conclusive evidence of the dissentient part owner's disclaiming all interest in the voyage. The bond given is only for the safe return of the vessel; and it provides the security not only of the other part owners, but of sureties also. *The Apollo,* 1 Hagg. 307; Ben. Adm. 652. It makes no reference to any personal liability of dissenting part owners, and does not purport to indemify them from any personal liability. The object of the bond is plainly not to exempt from personal liability, but to save the dissentient part owner from the loss of his interest in the vessel or of injury to it through the contemplated voyage, which mere dissent would not secure to him. Macl. Shipp. 100. The exemption from personal liability to third persons which attends the taking of such a bond, therefore, arises, not from anything in the bond, but from the conclu-

sive evidence it affords that the dissenting part owner abandoned all control and interest in the voyage to the other part owners. While this evidence is doubtless the best, it does not follow that it is the only evidence which the court should regard; and the numerous cases in which dissenting part owners have been held not liable for supplies, shows that proof of actual dissent is sufficient. In *Horn* v. *Gilpin,* Amb. 255, it was held that a court of chancery would not compel a part owner who had expressly notified his dissent to contribute to a loss; and the case of *Gould* v. *Stanton,* 16 Conn. 12, 27, was decided on the ground that there was no express dissent to the voyage; while in *Frazer* v. *Cuthbertson,* above cited, (6 Q. B. Div. 93,) the defendant, though one of the registered owners, was held not liable, as he had notified to the other owners his intention not to take any part in the navigation or management of the ship.

As respects the second defense, the statute of limitations, though this is not strictly a bar in admiralty, there does not seem to be sufficient reason why it should not be followed by analogy in this court as in equity. *Willard* v. *Dorr,* 3 Mason, 95; *The Sarah Ann,* 2 Sumn. 206, 212; *Saunders* v. *Buckup,* Blatchf. & H. 269; Ben. Adm. § 575; 2 Conkl. Adm. 22. The defendant was at all times, during the eight and a half years prior to the commencement of this suit, a well-known merchant in this city, accessible daily. The libelant, it is true, was during most of this time diligently pursuing his remedy *in rem,* (*The Zodiac,* 5 Fed. Rep. 220;) but this has never been held to be a ground for the extension of the statutory period of limitation in regard to remedies *in personam.*

The intervention of Raymond as part owner and claimant when the vessel was libeled *in rem* for this collision, and his furnishing a surety to the other claimants in their stipulation for her release, do not affect his exemption from personal liability; for the vessel might be bound, though he was not personally answerable; and he had a right to intervene as claimant for the protection of his interest, and to defeat, if he could, the alleged lien upon the vessel and upon his interest in her for the alleged torts of the master. It was merely a defense of his own property against an asserted charge upon it, and it involved no ratification of the voyage, or of the appointment of the master as his agent or representatative in the navigation.

The libel should be dismissed, with costs.