## JOUANNEAU, Curator, v. SHANNON.

Though, in a contest between two joint owners of a steamer as to the extent of their re-
spective interests, the enrollment, which states merely that the two are sole owners, will
raise a presumption, under art. 2836 C. C., that the joint ownership was equal, it may be
rebutted by the production of the books and papers of the steamer, which, under the cir-
cumstances, are equivalent to a written title in favor of the defendant: and parol evidence
of their contents, unless specially objected to as secondary, must receive the same con-
sideration as the books and papers themselves.

A part owner of a steamer or vessel, who owns more than half of the vessel, and is in pos-
session, has an undoubted right to employ her in her usual trade, where no objection is made
by his co-proprietor. It is only where the owners disagree, that there is any conflict in
the jurisprudence of maritime nations on this subject. Nor will this right of employ-
ment cease by the death of the co-proprietor, his rights and obligations being transmitted
to his heirs.

Where one of the part owners of a steamer, in the exercise of his legal rights, continues
the steamer in her usual trade, after the death of his co-proprietor, without objection on
the part of the heirs or representatives of the deceased, any loss resulting from an ex-
plosion of her boilers must be borne by the co-proprietors in proportion to their respective
interests, unless it be shown to have resulted from the negligence or misconduct of
the surviving part owner. And where, in such a case, the share of the survivor is pur-
chased by a third person after the explosion, who causes the repairs necessary to render
the boat fit for navigation to be made in a prudent manner and in good faith, without objection
on the part of the heirs or representatives of the deceased, and the repairs are proved to have
increased the value of the boat more than their cost, the share of the deceased must, as
between the succession itself and the purchaser, be charged with its proportional part of
the cost of the repairs.

APPEAL from the Second District Court of New Orleans, *Canon,* J. *Red-*
*mond* and *Cohen,* for the plaintiff.   *Goold* and *Kendall,* for the appellants.
The judgment of the court *(King,* J. absent,) was pronounced by

SLIDELL, J.   *Miller* and *Whipple* owned the steamboat Medora.   *Whipple*
died in New Orleans, in January, 1847: his succession was opened here ; and,
after some delay, *Jouanneau* was appointed curator.   In February, 1847, while
making her second trip after *Whipple's* death, an explosion of her boilers took
place, by which she was much injured.   *Miller* then sold his interest, of three-
fourths, to the defendant, who repaired and put her in running order.   In April,
the curator brought this suit, in which he claims one-half of the boat.   *Shannon*
answered claiming three-fourths, and asking to be allowed the sums he had ex-
pended for necessary repairs.

The first point which requires consideration is, the extent of ownership of the
parties.   The enrollment, which was made in 1846 upon the oath of *Miller,*
states that he, together with *Whipple,* are sole owners of the Medora.   To
prove that *Whipple's* interest was only a fourth, the defendant offered the testi-
mony of the steamer's clerk, who deposes that he kept her books : that *Miller*
appeared on the books as owner of three-fourths, which he afterwards sold to
*Shannon ;* that *Whipple,* who acted as the boat's engineer, owned one-fourth,
as also appeared on the books ; that he never claimed a larger interest, and, in
all his settlements of account whit the boat, acted on the basis of an interest of
one-fourth.

The plaintiff objected to this testimony, on the ground, "that the enrollment,
introduced in evidence by plaintiff, having established the joint ownership of the

steamboat by plaintiff and defendant, and the law (C. C. 2836) raising in plaintiff's favor the presumption that said joint ownership was equal, the title of defendant to a greater portion of such boat could only be established by an instrument in writing, inasmuch as plaintiff established his interest by evidence of that character,"—which objection the court overruled, and the plaintiff took his bill of exceptions.

The ruling of the court does not appear to us erroneous. It may be conceded that, the analogy of the article of the Code referred to justifies the presumption invoked by the plaintiff. It declares that "when the contract of partnership does not determine the share of each partner in the profits or losses, each one shall be entitled to an equal share of the profits, and must contribute equally to the losses." But, while the enrollment fairly raises that presumption, it is not a presumption *juris et de jure*. It is merely a presumption supplied, in the silence of the parties, upon the principle that equality is equity, and that an equitable standard will be applied where the parties had not expressly furnished one. The burden was thrown upon *Shannon* to rebut the legal inference, and we think he has done so successfully.

It will be observed that no objection was made to the non-production of the books and accounts, nor to the parol proof of their contents. The books and accounts, under the circumstances, were equivalent to a written title in favor of the defendant : and parol proof of their contents, unless specifically objected to, as being secondary evidence, must receive the same consideration as the books themselves.

Concurring in opinion with the district judge that, *Whipple* owned only one-fourth of the steamer, our next enquiry will be directed to the conduct of *Shannon* after *Whipple's* death, and its legal consequences.

The right of a part owner in possession, who owns the preponderating share of a vessel, to employ her in her usual trade, where no objection is made by his co-proprietor, appears to be undoubted. It is only in the case where the owners disagree, that we find any conflict in the jurisprudence of maritime nations. The laws of France, the ordinances of the Hanse towns, those of Wisbuy, and generally the ancient usages, are said to authorize the exercise of a complete authority by the majority in interest. The english law qualifies this authority. It authorizes the majority in interest to employ the ship, yet, at the same time, protects the interests of the dissentient minority from being lost in any employment which they disapprove, by requiring the majority to give security for the vessel's safe return. Differing upon a minor point, the laws of all commercial nations harmonize to this extent, that they are founded upon equitable principles and an enlarged public policy. In the language of a learned author, " ships are built to plough the sea and not to lie by the walls, and their actual employment is considered as a matter not merely of private advantage to their owners, but of public benefit to the State ; and therefore rules have been adopted to favor this employment, and to prevent the obstinacy of some of the part owners from condemning the ship to rot in idleness." Abbott on Ship., p. 125.

In a liberal furtherance of these principles it has been held that, if the dissenting part owner does not apply for security, he is supposed to consent to the employment of the ship, is liable for his share of the expenses, and entitled to a share in the profits. *Gould* v. *Stanton*, 16 Conn. 12, cited in notes to Abbott, edit. of 1846.

We have not found in the books any case where the question of the right of employment, after the death of a part owner, has occurred. But, upon

principle, we conceive the cases are not distinguishable. The rights and the ob-. ligations of a party are transmitted to his heirs. *Whipple*, when he assented to, become a part owner with *Miller*, assumed all the obligations and liabilities. which pertained by legal implication to that relation. If *Miller* choose to send the steamer on a voyage, and *Whipple* did not object, the vessel and the. voyage were not at *Miller's* sole risk. If *Whipple* objected, his remedy was by· application to a competent tribunal to compel his associate to give security. With, what propriety can the, character of· the contract, and the reciprocal rights and duties of the parties, be immediately changed by the transmission of the interest of *Whipple* to his heirs? Public policy, and the interest of· *Miller*, who was, the owner of three-fourths of the vessel, still required that she should not lie idle at the wharf, but be usefully employed.

The peculiar circumstances, presented in this case illustrate very strongly the. propriety of maintaining the principles above explained, even after the death of· the part owner. The steamer had been advertized to leave, on her usual voyage, on the day of *Whipple's* death. She was a regular packet, had been taking in cargo on the day· of his death and the day previous, and was heavily· laden. If· the argument of the plaintiff's counsel be correct, and *Whipple's* death termin-. ated the controlling power of the majority interest, the steamer should not only· have withdrawn from all future business, but have disappointed passengers, already engaged, and disembarked the freight she had already received. Such a, proposition certainly involves an injustice to *Whipple's* co-proprietor, and a dis-. regard of the interests of commerce.

It is proper also to add that, the boat made only two trips after the part owner's, death, and these were in her regular trade as a packet. .

Being therefore of opinion that the continuance of the boat's employment,, in the absence of any objection. by the proper representative of the suc-. cession, was not illegal, the solution of the question arising out of the, explosion, which occurred on her second trip after *Whipple's* death, is free from, difficulty. *Miller* having a right to employ the boat usefully, he is not to bear· the whole burden of that loss, unless it can be attributed to some fault on his part. Under the evidence, it is doubtful whether the accident arose from some defect in the boilers, or from the inattention of the engineer. But there is no-thing proved which would authorize us to say that the loss was attributable to, any misconduct or negligence on the part of *Miller*, either in the selection of an, engineer or otherwise. If the same thing had happened in *Whipple's* life time, under similar circumstances, there would be no pretence for inflicting the whole, loss on his associate.

The explosion injured the boat so seriously that, she would have been entirely unfit for navigation without repairs. *Shannon*, who bought *Miller's* interest, had these repairs made in a prudent manner and in good faith; and the claim, for these repairs, having been submitted by order of the court below to skilful, experts, has been ascertained to be reasonable. The outlay was $3,973 66; and, in, the opinion of the experts, has increased the value of the vessel in a greater· ratio.

As these repairs were necessary and reasonable, and have contributed to the. common benefit, and as there is no evidence of any objection by the representa-. tive of the succession to their being made, it would be inequitable to enrich the, succession at the expense of *Shannon*.

Even if the part owners are not to be treated, *inter se*, as commercial partners,

under article 2796 of the Code, they are at least to be considered as quasi partners, and accountable for the excess which one, in good faith, has advanced for the other. As between the succession of *Whipple* and the defendant, we entertain no doubt that the share of the former in the proceeds of the boat, should be charged, in favor of *Shannon*, with one-fourth of the amount of $3,973 66, expended for the repairs. *Gardner* v. *Cleveland*, 9 Pick. 336.

It may be, however, that the succession is not solvent; and we think it proper not to express an opinion now as to the right of *Shannon* adversely to creditors of the estate, but will leave that question to be settled upon a tableau of distribution.

It is therefore decreed that, the judgment of the court below be reversed. It is, further decreed that, the said *Shannon* be recognized as the owner of three fourths of the steamer Medora, and, as such, that he receive three fourths of the proceeds of the sale of said steamer. It is further decreed, that the said succession be recognized as the owner of one-fourth of said steamer; that the said succession be adjudged the debtor of the said *Shannon* in the sum of $993 41½; and that the right of *Shannon* to be paid said sum, by preference out of the share of said succession in said proceeds of sale, be reserved for adjudication upon the tableau of distribution, said share of said proceeds to be considered as representing the share of the said succession in the said vessel. And it is further decreed that, the costs of this appeal be paid by the succession; and that the costs of this suit in the court below be paid by the said succession, and the said *Shannon*, in equal portions.